## 31691. THOMPSON v. MUNICIPAL ELECTRIC AUTHORITY OF GEORGIA et al.

JORDAN, Justice.

The State of Georgia, through the District Attorney of the Atlanta Judicial Circuit, brought a bond validation proceeding under the Municipal Electric Authority of Georgia Act (Ga. L. 1975, pp. 107-147; Code Ann. Ch. 34B-4) against the Municipal Electric Authority of Georgia, Georgia Power Company, Oglethorpe Electric Membership Corporation, Crisp County, 47 named municipalities, and 7 named commissions, commissioners, and boards, for the validation of $1,600,000,000 in principal amount of Municipal Electric Authority of Georgia Power Revenue Bonds.

S. Fletcher Thompson intervened, and appeals the judgment confirming and validating the bonds. He enumerates 25 alleged errors.

1. In the first five enumerated errors the appellant contends that the trial judge in his order validating the bonds erred in ruling that the Authority had authority to function as an instrumentality of the state in providing electric power to the political subdivisions of the state which own and operate electric distribution systems, and to contract with Georgia Power Company, Oglethorpe Electric Membership Corporation, and the political subdivisions named in the proceeding, for the purchase, ownership, operation, and maintenance of the facilities which constitute the subject matter of the contracts.

The Act creating the Authority (Code Ann. Ch. 34B-4) gives it authority to function and contract in the manner approved by the trial judge, and unless that Act is unconstitutional, there is no merit in the contention that there is no provision of law for the ruling of the trial judge.

2. Enumerated error 6 asserts that the court erred in holding that provisions of the Act, and particularly §§ 34B-408 and 34B-422, are valid and lawful and constitute the law of this state. It is argued that these provisions do not comply with the general law set forth in the Revenue Bond Law (Ga. L. 1937, pp. 761-774, as amended; Code Ann. Ch. 87-8). The Revenue Bond Law states that its

provisions "shall not affect the powers conferred by any other general, special, or local law." Code Ann. § 87-825. The provisions of the Municipal Electric Authority Act are not unlawful as being contrary to provisions of the Revenue Bond Law. *Sigman v. Brunswick Port Authority,* 214 Ga. 332 (4) (104 SE2d 467) (1958); *Rich v. State of Ga.,* 237 Ga. 291, 294 (227 SE2d 761)(1976).

3. Enumerated error 7 asserts that the trial judge erred in holding that stated provisions of the Power Revenue Bond Resolution are valid and lawful.

The argument that the provisions are contrary to the Revenue Bond Law has been dealt with in Division 2.

There is no merit in the assertion that the provision of the resolution purporting to provide a method or formula by which the amount of principal to be paid each year may be determined does not constitute either a method or a formula.

Other provisions of the resolution which are attacked are in conformity with the Act.

4. Enumerated error 8 asserts that the trial judge erred in holding that the allegations of paragraph 28 of the petition, that the interest rate or rates which the bonds when issued are to bear shall not exceed nine percent or such higher rate of interest as may be then authorized by law, is a valid and lawful provision in compliance with the terms of the Act. It is argued that this paragraph does not set forth the maximum rate which the bonds, when issued, will bear, but gives alternate rates.

The allegations of paragraph 28 are in conformity with Code Ann. § 34B-408.

5. Enumerated errors 9, 21, 22, and 23 are related and will be considered together. Enumerated error 9 asserts that the political subdivisions contracting with the Authority do not have the power to pledge their faith and credit to the payment of the obligations created and to levy taxes for the purpose of making the payments. Enumerated error 21 asserts that the obligations of the Authority are debts of a county, municipality, or political subdivision in violation of the Constitution, Art. VII, Sec. VII, Par. I (Code Ann. § 2-6001), which prohibits the creation of certain debts without the assent of a majority of the qualified voters. Enumerated error 22 asserts that

the Act, and particularly § 34B-408, violates the Constitution, Art. VII, Sec. VII, Par. V (Code Ann. § 2-6005), which prohibits a political subdivision from exercising the power of taxation to pay the principal or interest of any revenue bonds. Enumerated error 23 contends that the trial judge erred in holding that the political subdivisions which have entered into contracts with the Authority can never be compelled to exercise their powers of taxation to pay the bonds, and that the political subdivisions are authorized by the Constitution, Art. VII, Sec. VI, Par. I (a) (Code Ann. § 2-5901 (a)), to incur the obligations created by the contracts and to levy taxes to pay the obligations incurred by said contracts.

Code Ann. § 34B-413 (b) provides that the *bonds* and *notes* issued under the authority of the Act shall not constitute a debt, loan, or pledge of the faith and credit of the State of Georgia or of any political subdivision thereof, other than the Authority. Code Ann. § 34B-417 provides that the Authority and certain political subdivisions of the state may contract together for the payment by the political subdivisions of rates, tolls, fees, and charges for the use by the subdivisions of "the services and facilities of the project or projects and facilities of the Authority," and the amounts contracted to be paid by the political subdivisions "shall constitute general obligations of such political subdivision for the payment of which the full faith and credit of such political subdivision may be pledged to provide the funds required to fulfill all obligations arising under any such *contract*." (Emphasis supplied.)

These Code sections are not contradictory. The *bonds* and *notes* are the obligations of the Authority, and the political subdivisions do not pledge their full faith and credit to pay them. However, the political subdivisions have authority under the Constitution, Art. VII, Sec. VI, Par. I (a) (Code Ann. § 2-5901 (a)), to enter into contracts with the Authority and to pledge their full faith and credit and levy taxes to meet their contractual obligations pursuant to the law of contracts. State authorities, lawfully created, are not subject to the restrictions of §§ 2-6001 and 2-6005. See *Sheffield v. State School Building Authority,* 208 Ga. 575, 581 (68 SE2d 590) (1952); *State of*

*Ga. v. Ga. Rural Roads Authority,* 211 Ga. 808, 811 (89 SE2d 204) (1955); *Sigman v. Brunswick Port Authority,* 214 Ga. 332 (2), supra; *Stephenson v. State of Ga.,* 219 Ga. 652 (135 SE2d 380) (1964); *Daughtrey v. State of Ga.,* 226 Ga. 758 (2) (177 SE2d 670) (1970).

6. Enumerated error 10 contends that the court erred in holding that the consideration to be paid by the political subdivisions to the Authority is not too indefinite to be binding. There is no merit in this contention.

7. Enumerated error 11 complains of the ruling of the court that the Authority is exempt from the property transfer tax imposed by Code Ann. § 92-801 (Ga. L. 1967, p. 788; 1971, p. 266). We find no merit in this contention.

Enumerated error 19 contends that § 34B-406 violates the Constitution, Art. VII, Sec. I, Pars. II (1) and IV (Code Ann. §§ 2-5402 (1) and 2-5404).

There is no merit in this contention. The property of the Municipal Electric Authority of Georgia is public property and exempt from taxation. *Sigman v. Brunswick Port Authority,* 214 Ga. 332 (2), supra; *Hospital Authority of Albany v. Stewart,* 226 Ga. 530 (175 SE2d 857) (1970); *Rich v. State of Ga.,* 237 Ga. 291, 299, supra.

8. Enumerated error 12 asserts that the court erred in holding that the Act does not authorize any action to be taken, and none has been taken pursuant to the Act, in violation of the due process clauses of the State and Federal Constitutions. It is argued that the pledging of the full faith and credit and taxing power of the political subdivisions constitutes a taking of the intervenor's property without due process of law.

There is no merit in this contention. *Williamson v. Housing Authority of Augusta,* 186 Ga. 673 (5) (199 SE 43) (1938).

9. In enumerated errors 13 and 20 it is asserted that the Act, § 34B-407 thereof, and the action taken pursuant thereto, violate the Constitution, Art. VII, Sec. I, Par. II (1) (Code Ann. § 2-5402 (1)), which prohibits the grant of any donation or gratuity by the General Assembly, and Art VII, Sec. V, Par. I (Code Ann. § 2-5801), which prohibits any political subdivision from loaning its credit to any corporation, company, association, institution or individual except for purely charitable purposes.

The appellant argues that § 34B-407 gives the Authority power to contract for the sale of power to privately owned electric utility systems and to contract with private persons and corporations for the construction, operation, and maintenance of projects to be owned in common by the Authority and such private persons; that the Authority has entered into contracts with the Georgia Power Company for the sale of power and energy to it and for the construction, operation, and maintenance of the initial facilities of the project covered by such contracts; and that such contracts constitute a loan or a pledge of faith and credit of the political subdivisions and of the Authority, and constitute a grant, donation, or gratuity.

The contracts with the Georgia Power Company are not grants, donations, or gratuities, but are for the purchase of undivided interests in facilities of the company. There is no constitutional prohibition against the Authority acquiring property, or an undivided interest therein, from private persons or contracting with private persons for the construction, operation, or maintenance of its project. There is no violation of Code Ann. § 2-5801, since the Authority is not a county, municipal corporation or political subdivision of this state. *Bradfield v. Hospital Authority,* 226 Ga. 575, 587 (176 SE2d 92) (1970).

10. Enumerated error 14 alleges that § 34B-427, limiting the operation of the Act to those political subdivisions of the state which owned and operated an electric distribution system on the date the Act became law, offends the Constitution, Art. I, Sec. IV, Par. I (Code Ann. § 2-401), requiring that laws of a general nature shall have uniform operation throughout the state; and that the section provides special privileges to a particular group of citizens to the exclusion of others in violation of the Constitution, Art. I, Sec. I, Par. II (Code Ann. § 2-102).

There is no merit in these contentions. Compare *Williamson v. Housing Authority of Augusta,* 186 Ga. 673, 676, supra; *Sigman v. Brunswick Port Authority,* 214 Ga. 332 (4), supra.

11. Enumerated error 15 contends that the court erred in holding that the Act, and particularly § 34B-417,

do not constitute a delegation of legislative powers in violation of the Constitution, Art. III, Sec. I, Par. I (Code Ann. § 2-1301).

The conferring of power on the fiscal authorities to appropriate funds to pay the obligations under the contracts and to make payments of such funds, which is complained of here, does not constitute an unconstitutional delegation of legislative powers. Compare *Williamson v. Housing Authority of Augusta,* 186 Ga. 673, 680, supra; *Sheffield v. State School Bldg. Authority,* 208 Ga. 575 (3) (68 SE2d 590) (1952).

12. Enumerated error 16 contends that the court erred in holding that § 34B-430, limiting the power of the state to adversely affect the interests of the owners of the Authority's bonds and notes, is not in violation of the Constitution, Art. III, Sec. VII, Par. VIII (Code Ann. § 2-1908), which prohibits an Act from containing matter different from what is expressed in the title; and Art III, Sec. I, Par. I (Code Ann. § 2-1301), which provides that the legislative power of the state shall be vested in the General Assembly.

It is not necessary that the caption of an Act contain a synopsis of every provision in the Act. The caption of the 1975 Act (Ga. L. 1975, pp. 107-108) gives notice that the legislation will deal generally with the creation of the Authority, and states specifically that it will deal with "rights for the owners of such bonds." There is no merit in the contention that the Act offends § 2-1908 for the reason contended. *State of Ga. v. State Toll Bridge Authority,* 210 Ga. 690, 701 (82 SE2d 626) (1954).

Code § 34B-430 does not limit the right of the General Assembly to legislate except to prevent legislation which will impair the contracts with the bond owners, and this is consistent with the Constitution, Art. I, Sec. III, Par. II (Code Ann. § 2-302).

13. Enumerated error 17 contends that the court erred in holding that the creation of the Authority and the granting of powers to it do not constitute a grant of corporate powers and privileges to a private company in violation of the Constitution, Art. III, Sec. VII, Par XVII (Code Ann. § 2-1917).

The Authority is a public corporation of the state,

and there is no merit in this contention. Code Ann. § 34B-402; *McLucas v. State Bridge Bldg. Authority,* 210 Ga. 1, 13 (77 SE2d 531) (1953); *State of Ga. v. State Toll Bridge Authority,* 210 Ga. 690, 694, supra.

14. It is asserted in enumerated error 18 that the court erred in holding that Code Ann. § 34B-417, authorizing the political subdivisions entering into contracts with the Authority to obligate themselves to use only the project of the Authority, are not unconstitutional as limiting the source of electric power for such political subdivisions in violation of the Constitution, Art. IV, Sec. IV, Par. I (Code Ann. § 2-2701), which declares that contracts and agreements which defeat or lessen competition or encourage monopoly are illegal and void.

"The long history of regulated monopoly in this state shows that the General Assembly is free to restrict competition among public utilities where, in the judgment of the legislature or its duly authorized delegate, such competition may be injurious to existing public service." *City of Calhoun v. North Ga. &c. Corp.,* 233 Ga. 759, 767 (213 SE2d 596) (1975).

One of the stated legislative purposes of the Act is the effecting of economies in the obtaining of electricity by the political subdivisions authorized to contract with the Authority. Code Ann. § 34B-403. The right granted to the political subdivisions to give an exclusive privilege or monopoly to the Authority to promote the public welfare does not violate § 2-2701.

15. In enumerated error 25 the appellant contends that the issues in the case were not properly before the court. The basis for this contention is that, after the validation judgment was rendered, the parties were advised that the affidavit of the publisher of the Camilla Enterprise was inaccurate which stated that notice of the proceedings had been properly published in Mitchell County.

By stipulation of the parties and order of the trial judge a supplemental record was sent to this court containing the affidavit of the publisher. He stated that the notice of the hearing on the validation of the bonds appeared in one edition of the Camilla Enterprise, but that the notice was inadvertently left out of the second

edition because of a power failure in the downtown area of the City of Camilla which required that the paper be assembled in semi-darkness.

The Act requires that notice of the validation hearing be published once a week during each of the two successive weeks immediately preceding the week of the hearing in Fulton County and in each county in which any portion of the defendant political subdivisions shall lie. Code Ann. §§ 34B-408 (i) and 34B-409.

Had the deficiency of notice been discovered in time, the hearing could have been postponed until proper notice could be given. *Oliver v. City of Elberton,* 124 Ga. 64 (1) (52 SE 15) (1905). In view of the fact that it was not discovered prior to the hearing, we must determine whether this deficiency invalidated the whole proceeding.

The purpose of the notice is to give information to the citizens of the political subdivisions contracting with the Authority of the proceeding to validate the bonds so that they might resist the validation of the proposed bond issue. The affidavit of the publisher of the Camilla Enterprise states that the Albany Herald has as wide a circulation in Mitchell County as his newspaper. The record shows that the bond validation notice was properly published in the Albany Herald. The citizens of the City of Camilla thus were afforded notice (although not in accordance with § 34B-409) of the validation hearing. In view of the wide coverage of the notice over the state, the notice in the Albany Herald, and the one notice in the Camilla Enterprise, we think the provision for notice was substantially complied with, and the bond proceeding will not be invalidated. Compare *Rhodes v. City of Louisville,* 121 Ga. 551 (2) (49 SE 681) (1904).

16. Enumerated error 24 asserts that the court erred in confirming and validating the bonds, resolution and contracts.

The appellant has shown no valid reason why the judgment confirming and validating the bonds was error, and the judgment is affirmed.

*Judgment affirmed. All the Justices concur, except Hall, J., who concurs in the judgment only.*

SUBMITTED OCTOBER 4, 1976 — DECIDED NOVEMBER 30, 1976.

*Archer & Barnes, James H. Archer, Jr.,* for appellant.

*Arthur K. Bolton, Attorney General, James C. Pratt, Staff Assistant Attorney General,* amicus curiae.

*M. A. Carlton, Jr., L. Clifford Adams, Jr., Oliver, Maner & Gray, Edwin Maner, Jr.,* for appellees.