43578. NATIONS v. DOWNTOWN DEVELOPMENT
AUTHORITY OF THE CITY OF ATLANTA et al.
(345 SE2d 581)

GREGORY, Justice.

This is the second appearance of this case which involves the validation of $85,000,000 in revenue bonds, the proceeds of which will be used to acquire property for and to construct a "festival marketplace" in the Underground Atlanta area. See *Nations v. Downtown Development Auth. of the City of Atlanta*, 255 Ga. 324 (338 SE2d 240) (1986) (hereinafter referred to as *Nations I*).

In January 1984 the Atlanta City Council adopted a resolution declaring the Underground Atlanta area to be a slum and blighted area within the meaning of OCGA § 36-61-2 (17) of the Urban Redevelopment Law. At the same time the Council adopted an Urban Redevelopment Plan, OCGA §§ 36-61-2 (20) and 36-61-7, for the revitalization of the Underground area. The plan called for the construction of "retail, dining and entertainment establishments," as well as "an office complex, museum, convention area, public park, pedestrian malls, terraces, streets, sidewalks, bridges and parking facilities." 255 Ga. at 324. The City originally proposed to acquire the property necessary for this project pursuant to OCGA §§ 36-61-8 (3) and 36-61-9 of the Urban Redevelopment Law. The City would then lease the project property to the Downtown Development Authority of the City of Atlanta (DDA), which would issue $85,000,000 in revenue bonds, reimbursing the City for its costs in acquiring the property and constructing the project from the bond proceeds. The DDA would lease the project to a private developer which would provide central management of the project. It would, in turn, sublease portions of the project to commercial tenants. The commercial tenants would pay a fixed portion of project revenues to the developer which would remit a fixed percentage of this amount to the DDA. Under § 5.3 of the lease the DDA agreed to pay, as rent, all project revenues to the City. Under the assignment of its interest in the lease to the trustee, the City would deposit all rents in a Revenue Fund from which the principal and interest on the bonds would be retired. Under § 5.4 (b) of the lease the City pledged its taxing power to make up 90% of any shortfall in the Revenue Fund necessary to pay the bondholders.

The City argued that the lease was a contract which came within the intergovernmental contracts clause of the 1983 Georgia Constitu-

tion, Art. IX, Sec. III, Par. I, (a)[1] and was therefore not a debt which would violate the debt clause of the Constitution, Art. IX, Sec. V, Par. I (a).[2] We held, however, that the lease was not a contract authorized by the intergovernmental contracts clause because "the City's promise to use its taxing power to pay up to 90% of any shortfall due the bondholders should the project proceeds prove to be insufficient is not a contract for services or joint services, nor is it a contract for the joint or separate use of facilities or equipment." *Nations*, supra at 327. Rather, we held that the City's guarantee of the bond obligations under § 5.4 (b) "is a debt which does not come within the exceptions created by the intergovernmental contracts clause and is therefore barred by the debt clause." *Nations*, supra at 328. This court affirmed the judgment of validation on condition, inter alia, that § 5.4 (b) be eliminated from the lease.

Subsequently, the City and DDA restructured certain portions of the lease, and again petitioned the Superior Court of Fulton County for validation of the bonds. The appellants in *Nations I* were again permitted to intervene in this proceeding[3] under OCGA § 36-82-77 (a). The trial court overruled their objections and entered judgment confirming and validating the bonds and security. We granted the City's motion to expedite this appeal.

The City now proposes to acquire the project property and convey it to the DDA. The City will lease the property back from the DDA[4] and sublease it to a private developer which will sublease it to the commercial tenants. The DDA will issue $85,000,000 in bonds, paying the City for the conveyance of property and constructing the project from the bond proceeds. The City will pay rent to the DDA in an amount equal to the debt service on the bonds issued. The DDA

---

[1] 1983 Georgia Constitution, Art. IX, Sec. III, Par. I (a) provides: "The state, or any institution, department, or other agency thereof, and any county, municipality, school district, or other political subdivision of the state may contract for any period not exceeding 50 years with each other or with any other public agency, public corporation, or public authority for joint services, for the provision of services, or for the joint or separate use of facilities or equipment; but such contracts must deal with activities, services, or facilities which the contracting parties are authorized by law to undertake or provide."

[2] 1983 Georgia Constitution, Art. IX, Sec. V, Par. I (a) provides: "The debt incurred by any county, municipality, or other political subdivision of this state, including debt incurred on behalf of any special district, shall never exceed 10 percent of the assessed value of all taxable property within such county, municipality, or political subdivision; and no such county, municipality, or other political subdivision shall incur any new debt without the assent of a majority of the qualified voters of such county, municipality, or political subdivision voting in an election held for that purpose as provided by law."

[3] Appellants in 43590, *Srochi v. Downtown Development Auth. of the City of Atlanta*, and 43604, *Allright Auto Parks, Inc. v. Downtown Development Auth. of the City of Atlanta*, filed notices of appeal in this case and briefed the issues, but subsequently withdrew from the appeal. The remaining appellant is a taxpayer.

[4] This is similar to the financing structure this court approved in *Building Auth. of Fulton County v. State of Ga.*, 253 Ga. 242 (321 SE2d 97) (1984).

will assign these rents to the trustee to be deposited in the Revenue Fund from which the principal and interest due on the bonds will be retired.

1. Article IX, Section V, Paragraph I (a) of the 1983 Georgia Constitution sets certain debt limitations for municipalities, and provides that a city may not incur a "new debt" without the consent of a majority of the qualified voters. However, under the intergovernmental contracts clause, Art. IX, Sec. III, Par. I (a) of the 1983 Georgia Constitution, " '[t]he state, or any institution, department, or other agency thereof, and any county, municipality, school district, or other political subdivision of the state may contract for any period not exceeding 50 years with each other or with any other public agency, public corporation, or public authority for joint services, for the provision of services, or for the joint or separate use of facilities or equipment; but such contracts must deal with activities, services, or facilities which the contracting parties are authorized by law to undertake or provide.' " *Nations*, supra at 326, fn. 4. "The [intergovernmental contracts] clause does not supersede other provisions of the Constitution, such as the debt clause, which place limitations on the powers of government. It merely carves out exceptions. *Mulkey v. Quillian*, 213 Ga. 507 (100 SE2d 268) (1957)." Id. at 327. It is clear a municipality may enter into a contract authorized by the intergovernmental contracts clause for the future expenditure of funds without violating the debt clause of Art. IX, Sec. V, Par. I (a). *Nations*, supra. The threshold issue here is whether the proposed lease between the City and the DDA is a contract authorized by the intergovernmental contracts clause such that the future rental payments required under the lease are not a debt of the City of Atlanta which violates the debt clause, Art. IX, Sec. V, Par. I (a).

The appellant argues that the lease does not deal "with activities, services, or facilities which the contracting parties *are authorized by law to undertake or provide*," 1983 Georgia Constitution, Art. IX, Sec. III, Par. I (a), and therefore fails to come within the requirements of the intergovernmental contracts clause. (Emphasis supplied.) The appellant maintains that the City of Atlanta is not authorized by law to construct and operate a "festival marketplace" which will ultimately compete with private businesses in the Atlanta area.

Under the Urban Redevelopment Law, OCGA § 36-61-8, the City has the power "[t]o provide . . . or to contract for the furnishing . . . by any person or agency, public or private of . . . streets, roads, public utilities or other facilities for or in connection with an urban redevelopment project, and to install, construct and reconstruct streets, utilities, parks, playgrounds and other public improvements . . . ." Under OCGA § 36-61-2 (18) (D), the City has the authority to make

"the land available for development or redevelopment by *private enterprise* or public agencies (including sale, initial leasing or retention by the municipality itself) at its fair value for uses in accordance with the urban redevelopment plan." (Emphasis supplied.) Under OCGA § 36-61-10 (a) "A municipality may sell, lease, or otherwise transfer real property in an urban redevelopment area or any interest therein acquired by it and *may enter into contracts with respect thereto,* for residential recreational, *commercial,* industrial or other uses or for public use. . . ." (Emphasis supplied.)

Under the intergovernmental contracts clause the City may lease facilities. The City may not lease just any facilities but only those which it is authorized by law to provide. In this case, there are facilities which the City is authorized by law to provide because under the Urban Redevelopment Law the City may provide facilities in connection with an urban redevelopment project, including facilities leased to private enterprises for commercial use. The City's promise to pay the rent (from whatever source of income the City may have, including taxes) is a debt, but it is a debt authorized under the constitution. *Building Auth. of Fulton County v. State of Ga.,* 253 Ga. 242 (12) (321 SE2d 97) (1984); *Thompson v. Municipal Electric Auth. of Ga.,* 238 Ga. 19 (5) (231 SE2d 720) (1976).

2. Section 5.3 (e) of the lease agreement provides in part, "The City covenants that it will exercise its power of taxation to the extent necessary to pay the amounts required to be paid hereunder and it will make available and use for the payment of its obligations incurred hereunder all such taxes levied and collected for that purpose together with funds received from any other source." The appellant argues that this pledge violates 1983 Georgia Constitution, Art. IX, Sec. II, Par. VIII, which provides, "The General Assembly shall not authorize any county, municipality, or other political subdivision of this state, through taxation, contribution or otherwise, to appropriate money for or to lend its credit to any person or to any nonpublic corporation or association except for purely charitable purposes." Appellant takes the position that the City's pledge to use its taxing power to make up any shortfall in the rents is an unconstitutional lending of credit to the private developer.

In *Nations I* we held that the City's guarantee to make up 90 percent of any shortfall which exists because project revenues are inadequate to pay the bondholders was "a loan of the credit of the City for the benefit of the developers and in violation of 1983 Georgia Constitution Art. IX, Sec. II, Par. VIII." *Nations,* supra at 328. Under the lease proposed in that case, the City would be the landlord of the DDA with the rent set at an amount sufficient to retire the debt service on the bonds. The DDA would sublease the project property to a private developer which would sublease it to commercial tenants. The

commercial tenants would remit a fixed portion of project revenues to the developer as rent. The developer would remit a fixed percentage of these revenues to the DDA as rent. The DDA would then pay this rent to the City. The City pledged that should the collected rents be insufficient to retire the principal and interest due on the bonds, it would make up 90 percent of the shortfall. The City, therefore, guaranteed that it, as landlord, would make up 90 percent of any deficit in the rents owed by the commercial tenants and private developer. This was a pledge of the City's credit, and we held in *Nations I* it was in violation of Art. IX, Sec. II, Par. VIII.

In the lease proposed to us in this case, the City has not pledged or loaned its credit to anyone. Rather, the City has pledged its taxing power to make up any deficit in the rents *it* is obligated to pay under a valid intergovernmental contract. We note that this pledge of municipal taxing power is permissible under the intergovernmental contracts clause. See Division 1, supra; *Building Auth. of Fulton County*, supra at 250; and *Thompson*, supra at 21. We hold that this is a valid use of the City's credit for *its own* lawful purposes and obligations, and is not violative of Art. IX, Sec. II, Par. VIII.

*Judgment affirmed. Marshall, C. J., Clarke,˙ P. J., Smith, Bell, Hunt, JJ., and Judge Robert L. Royal concur. Weltner, J. dis- qualified.*

DECIDED JULY 15, 1986.

*Mayer, Nations & Perkerson, Randolph A. Mayer,* for appellant.
*Lewis R. Slaton, District Attorney, Rogers & Hardin, Steven E. Fox, Marva Jones Brooks, Kilpatrick & Cody, A. Stephens Clay,* for appellees.