S95A0231. CLAYTON COUNTY AIRPORT AUTHORITY et al.
v. STATE OF GEORGIA et al.
(453 SE2d 8)

CARLEY, Justice.

Pursuant to OCGA § 36-82-75, a petition for judicial validation of revenue bonds was filed in the name of appellee State of Georgia. The bonds were to be issued by appellant Clayton County Airport Authority (Authority) for the purpose of financing its acquisition of an existing airport facility from appellant Clayton County (County) and an expansion of that facility. For its part, the County agreed to convey the existing airport facility to the Authority and also contracted with the Authority "for the use" of the expanded airport facility. Appellee Intervenors, in their capacities as citizens of the County, objected to the validation of the Authority's bonds, and were made parties to the proceeding. After conducting a hearing, the superior court entered an order denying validation of the bonds. From that order, the Authority and County bring this appeal.

1. OCGA § 36-82-66 provides, in relevant part, that revenue bonds "shall not be payable from or charged upon any funds other than the revenue pledged to the payment thereof. . . ." In calculating the sufficiency of its "revenue pledged to the payment" of the bonds, the Authority included the consideration which the County was obligated to pay for the use of the expanded airport facility. That consideration was not expressed in terms of a definite dollar amount payable by the County, but in terms of those "amounts sufficient to enable the Authority to pay the principal and interest on" its revenue bonds. In denying validation of the bonds, the superior court found that this consideration did not constitute lawful "revenue" for the Authority, but was, instead, an unconstitutional "new debt" incurred by the County without the assent of a majority of its qualified voters. See Art. IX, Sec. V, Par. I (a) of the Ga. Const. of 1983.

Whether the contractual consideration is an unconstitutional "new debt" incurred by the County or the Authority's lawful "revenue pledged to the payment of" its bonds is dependent upon whether the contract between the County and the Authority is a valid intergovernmental contract authorized by Art. IX, Sec. III, Par. I of our constitution.

> "The [intergovernmental contracts] clause does not supersede other provisions of the Constitution, such as the debt clause, which place limitations on the powers of government.

It merely carves out exceptions. [Cit.]" [Cit.] It is clear a [county] may enter into a contract authorized by the intergovernmental contracts clause for the future expenditure of funds without violating the debt clause of Art. IX, Sec. V, Par. I (a). [Cit.]

*Nations v. Downtown Dev. Auth. of the City of Atlanta*, 256 Ga. 158, 160 (1) (345 SE2d 581) (1986).

The intergovernmental contracts clause authorizes the County and the Authority to enter into contracts "for the joint or separate use of facilities. . . ." Art. IX, Sec. III, Par. I (a) of the Ga. Const. of 1983. Here, the County has contracted "for the use" of an airport facility which the Authority proposes to acquire and expand. Although the consideration which the County agrees to pay for the use of the expanded airport facility is not set forth in a definite dollar amount, there is no constitutional or statutory provision which specifies how the consideration necessary to support an intergovernmental contract must be expressed by the parties to such a contract. See *Nations v. Downtown Dev. Auth. of the City of Atlanta*, supra at 159 (upholding an intergovernmental contract wherein the consideration was expressed in terms of "an amount equal to the debt service on the bonds issued"). The only requirement is that the intergovernmental contract itself "must deal with activities, services, or facilities which the contracting parties are authorized by law to undertake." Art. IX, Sec. III, Par. I (a) of the Ga. Const. of 1983. By law, the Authority is granted broad authority to undertake to provide an airport facility for the County. Ga. L. 1994, pp. 4305, 4311 et seq. Pursuant to Art. IX, Sec. II, Par. III (a) (9) of our constitution, the County is authorized generally to undertake to provide for "[p]ublic transportation" and, pursuant to OCGA § 48-5-220 (14), the County is authorized specifically to expend tax revenues to provide for an airport facility. The County's contract for the use of the airport facility to be acquired and expanded by the Authority is, therefore, a valid intergovernmental contract.

The County's promise to pay "for the use" of the airport facility "is a debt, but it is a debt authorized under the constitution. [Cits.]" *Nations v. Downtown Dev. Auth. of the City of Atlanta*, supra at 161 (1). It follows that, contrary to the superior court's finding, the contractual consideration represents the Authority's lawful "revenue pledged to the payment of" its bonds rather than an unconstitutional "new debt" incurred by the County.

2. OCGA § 36-82-66 further provides, in relevant part, that the holders of the Authority's bonds shall never "have the right to compel any exercise of the taxing power of the governmental body to pay any such bonds or the interest thereon. . . ." In denying validation of the

bonds, the superior court found that this statutory provision would be violated because, in its contract with the Authority, the County agreed that, if necessary, it would exercise its taxing power to pay for the use of the airport facility.

Although the bonds are obligations of the Authority and the County cannot pledge its full faith and credit to pay them, the County does have the

> authority under [the intergovernmental clause of] the Constitution, [cit.], to enter into contracts with the Authority and to pledge [its] full faith and credit and levy taxes to meet [its] contractual obligations pursuant to the law of contracts.

*Thompson v. Municipal Elec. Auth. of Ga.*, 238 Ga. 19, 21 (5) (231 SE2d 720) (1976).

The pledge of the County's "taxing power is permissible under the intergovernmental contracts clause. [Cits.]" *Nations v. Downtown Dev. Auth. of the City of Atlanta*, supra at 162 (2). It follows that the superior court erred in denying validation of the bonds on the basis of the County's pledge of its taxing power as security for its own obligation to pay for the use of the expanded airport facility.

3. Under the terms of the contract, the County will not pay its consideration for the use of the expanded airport facility directly to the Authority. Instead, the contract provides that the County's consideration is to be paid directly to the custodian of the Authority's sinking fund established for retirement of the bonds. The superior court found that this payment scheme was an additional reason to deny validation of the bonds.

Although the County's consideration will not be paid directly to the Authority, the contract nevertheless unambiguously provides that that consideration is to be deemed "Contract Payments to the Authority." The County's consideration is, therefore, clearly "revenue" for the Authority, since it is "revenues, income, [or] earnings arising out of or in connection with the operation or ownership of the" expanded airport facility. OCGA § 36-82-61 (3). As "revenue" for the Authority, the County's consideration can be pledged by the Authority "to the payment" of its bonds. OCGA § 36-82-66. As revenue pledged to the payment of the Authority's bonds, the County's consideration can be deposited into a sinking fund created pursuant to OCGA § 36-82-65 (a) (3). Although the Authority presumably could choose to serve as the conduit through which this revenue would pass to the custodian of the sinking fund, there is nothing to prohibit the Authority from contracting for the payment of the County's consideration directly to the custodian of the sinking fund. Because the sink-

ing fund was designated by the Authority as the ultimate depository of the revenue which it has pledged to the payment of its bonds, the County's consideration would not lose its character as such "revenue" simply because it will not pass directly from the Authority to the custodian. The Authority merely has designated the custodian as its agent for the receipt, as well as for the deposit, of the revenue pledged to the payment of the bonds.

"[P]roper payment to the authorized agent of a disclosed principal . . . is payment to the principal in contemplation of law. . . ." *McGinley v. Chappas*, 91 Ga. App. 418 (1) (85 SE2d 791) (1955). It follows that, contrary to the finding of the superior court, the payment scheme does not require that validation of the Authority's bonds be denied.

4. None of the grounds upon which the superior court predicated the denial of validation of the Authority's bonds was meritorious. The judgment of the superior court is, therefore, reversed with direction that a judgment validating the bonds be entered.

*Judgment reversed with direction. All the Justices concur.*

DECIDED FEBRUARY 13, 1995.

*Sutherland, Asbill & Brennan, John H. Mobley II, Charles T. Lester, Jr., Foster & Foster, Larry A. Foster,* for appellants.

*Robert E. Keller, District Attorney, Lee Sexton,* for appellees.

*King & Spalding, Robert L. Steed, Alston & Bird, L. Clifford Adams, Jr., Della W. Wells, Brinson, Askew & Berry, Robert M. Brinson,* amici curiae.