S13A0992. TURNER COUNTY v. CITY OF ASHBURN et al.
(749 SE2d 685)

BENHAM, Justice.

This appeal, filed pursuant to our order granting application for discretionary review, is the fourth time in which the constitutionality of what has become known as the Local Option Sales Tax Act, OCGA § 48-8-80 et seq., or a provision of it, has come before this Court. The original statute that created the Local Option Sales Tax, hereinafter referred to as "LOST," was enacted in 1975[1] and created a special district of taxation for each county to finance certain services that consisted of only those portions of the county that were outside the boundaries of any municipality.[2] In *Martin v. Ellis*, 242 Ga. 340 (249 SE2d 23) (1978), this Court ruled that the provision of the LOST statute that authorized a differential rollback of county ad valorem taxes created a nonuniform scheme of taxation in violation of the uniformity requirements of the State Constitution.[3] Id. at 345. It was stricken from the statute, but the remainder of the Act was sustained. Id. Four months later, in a consolidated appeal of fifteen different lawsuits involving constitutional challenges to the LOST Act, this Court declared the entire Act to be unconstitutional because the scheme, as a whole, improperly permitted counties to collect the tax and then distribute a portion of its proceeds to municipalities within the special taxing district. *City Council of Augusta v. Mangelly*, 243 Ga. 358 (254 SE2d 315) (1979). The General Assembly acted promptly to pass a new version of the LOST Act,[4] now codified, as amended, at OCGA § 48-8-80 et seq., creating special taxing districts whose boundaries correspond with each of the State's 159 counties, and authorizing a tax that is neither a city nor a county tax, but a special district tax. See *Bd. of Commrs. of Taylor County v. Cooper*, 245 Ga. 251, 256 (2) (264 SE2d 193) (1980). In the *Taylor County* case, this Court held that such a joint tax was expressly authorized by the Constitution.[5] Id. at 255-256. This Court also approved the "local negotiation"

---

[1] Ga. L. 1975, p. 984.

[2] Id. at § 2, subsection (i).

[3] The original act provided a "differential rollback" of county ad valorem taxes for real property only in the unincorporated areas of the county. Id. at subsection (j). In effect, the original LOST statute permitted counties to tax the same services at different rates for residents inside versus those outside incorporated areas. It allowed the counties to finance services provided to residents outside municipalities solely with the proceeds of the sales tax and to collect no ad valorem property taxes from them but, for the same services provided to residents living within the county's municipalities, to collect the sales tax as well as ad valorem property taxes.

[4] Ga. L. 1979, p. 446.

[5] The provisions of Constitutional Amendment 19, referenced in the *Taylor County* case, are now found at Ga. Const. of 1983, Art. IX, Sec. II, Pars. III and VI.

feature of the Act setting forth a procedure whereby the county and qualified municipalities are required to negotiate the terms by which the jointly collected tax will be distributed between them and then execute jointly a certificate to be filed with the revenue commissioner. Id. at 256-258. The local negotiation feature was deemed not to be at odds with *Mangelly* because the tax was not a county tax with funds improperly distributed to municipalities but a special district tax with funds distributed, pursuant to negotiated agreement, throughout the district. Id. at 256. The local negotiation feature was found not to be an unlawful delegation of legislative authority because it does not delegate the power to tax but "merely allows the taxing authority to distribute the proceeds within its boundaries . . ." which is constitutionally authorized. Id. at 257. This Court determined it was not mandatory, under a delegation of legislative authority analysis, for the LOST Act to direct the division of funds between county and municipalities and it was permissible for the Act to leave to the governing authorities levying the tax the task of dividing the funds among them. Id.

Apparently, however, the local negotiation feature of the LOST Act posed political problems due to the requirement that the county and the qualified municipalities reach an agreement regarding how to divide and distribute tax funds in order to file the necessary renewal certificate with the revenue commissioner at the time the tax must be renewed. Generally speaking, once the governing authorities of a special district have been authorized to collect the tax by referendum elections, they are initially required to agree to the distribution of collected funds in accordance with criteria set forth in OCGA § 48-8-89 (b), based in part upon population distribution between the governing entities, and then to notify the revenue commissioner by filing a certificate executed by each respective governing authority. The commissioner then disburses the tax revenue pursuant to the agreement of the parties, after deducting the State's one percent administration fee. Failure to file a certificate by the required date results in revocation of authority to impose the tax. OCGA § 48-8-89 (c). The LOST Act also requires renegotiation of the distribution of tax funds within a specified deadline after each decennial census in order for the governing authorities to take into consideration changes in population distribution within the taxing district, consider again the criteria set forth in subsection (b) of the statute, "make rational the allocation of [tax] resources," and then to file a renewed certificate; otherwise, authority to collect the tax expires on December 31 of the second year following the year in which the decennial census is conducted. OCGA § 48-8-89 (d) (1). The parties to this appeal, and the various entities that have filed amicus

curiae briefs, show that problems have arisen when the governing entities cannot agree to changes in the distribution formula for purposes of renewing the certificate. Pursuant to subsection (d) (2), the eligible political subdivisions are required to commence renegotiations no later than July 1 of the year in which the tax will otherwise expire. Pursuant to subsection (d) (3), if they have not reached an agreement within 60 days, they are required to agree to submit the dispute to nonbinding arbitration or some other form of alternative dispute resolution. Prior to amendment to subsection (d) which became effective June 4, 2010,[6] alternative dispute resolution was the final authorized step for the parties to reach an agreement in order to file the required renewal certificate within the deadline. Failure to reach an agreement resulted in termination of authority to collect the tax and if no certificate was filed regarding the manner in which previously collected taxes were to be distributed, then the proceeds were to escheat to the state.

In 2010, the legislature amended and rewrote OCGA § 48-8-89 (d). Pursuant to the 2010 amendment, if the nonbinding dispute resolution process set forth in subsection (d) (3) results in an impasse, an additional step is provided to the parties. Pursuant to a new subsection (d) (4), any necessary party to the required agreement may petition the superior court of the county in which the special district is located seeking resolution of the remaining items in dispute, and the case shall be assigned to a judge not in the circuit in which the county is located. The county on the one hand and the municipalities representing at least one-half the aggregate municipal population on the other hand then submit their written best and final offer specifying the distribution of the tax proceeds. Then,

> [t]he judge shall conduct such hearings as the judge deems necessary and shall render a decision based on the requirements and intent of paragraph (1) of this subsection and the criteria in subsection (b) of this Code section. The judge's decision shall adopt the best and final offer of one of the parties . . . and shall also include findings of fact. The judge shall enter a final order containing a new distribution certificate and transmit a copy of it to the commissioner.

OCGA § 48-8-89 (d) (4) (D). The statute provides limited grounds for appellate review of the judge's decision. OCGA § 48-8-89 (d) (4) (E).

---

[6] Ga. L. 2010, p. 958.

In the case now before us, appellant Turner County and appellees, who are the qualified municipalities within the special taxing district involved in this dispute, reached an impasse in their negotiations for renewing the LOST certificate that authorizes them to collect and distribute the tax, which certificate was required to be filed no later than December 30, 2012. Pursuant to the 2010 amendment to the statute, appellee municipalities timely filed a petition with the Turner County Superior Court seeking resolution of the dispute. Turner County filed a motion to dismiss the petition in which it raised various constitutional challenges to the 2010 amendment and its process for submitting the distribution dispute for judicial resolution. A judge was appointed to conduct the proceedings required by subsection (d) (4), and the judge heard oral argument from the parties but declined to conduct an evidentiary hearing. Afterwards, the trial court entered an order denying Turner County's motion to dismiss and sustaining the constitutionality of the 2010 amendment. The court also entered a final order adopting the final and best offer of the municipalities and finding that the municipalities' offer more closely comported with the requirements of the statute and the intent and criteria set forth in OCGA § 48-8-89 (b). A new distribution certificate reflecting the distribution proposed by the municipalities was attached to the order, and that certificate was transmitted to the commissioner. This Court granted Turner County's application for discretionary appeal to challenge the constitutionality of the 2010 amendment and posed three questions raising issues of particular concern. Upon consideration of the enumerations of error raised by Turner County and the briefing of the parties and amicus curiae, as well as oral argument, it is apparent that one issue is dispositive of the case: whether the procedure for judicial resolution set forth in OCGA § 48-8-89 (d) (4) violates the separation of powers doctrine of the Georgia Constitution of 1983, Art. I, Sec. II, Par. III. We conclude this procedure does violate the separation of powers doctrine, as set forth below, and declare that portion of the statute to be void.

Until the 2010 amendment to OCGA § 48-8-89 (d) (4), both the levy of a tax to be renewed pursuant to the LOST Act as well as the allocation of the proceeds of the tax required approval of the elected governing authority of each governmental entity participating in the tax. If the entities did not agree upon the renewal and the manner in which the renewed tax funds were to be allocated and no renewal certificate was timely filed, then the LOST expired as of December 31 of the year a new certificate was required to be filed. The specter of permitting a tax to lapse may have brought practical and political pressure upon the parties to reach a negotiated agreement but, nevertheless, the resolution of a dispute regarding the renewal of

LOST and the distribution of tax proceeds upon renewal was left solely to the discretion of the governing bodies involved in the LOST. As shown by Turner County, the additional procedure set forth in OCGA § 48-8-89 (d) (4), whereby one necessary party to the required renewal certificate may petition the superior court for an order determining how tax proceeds shall be distributed within the special tax district, effectively permits a municipality or county to obtain a court order forcing the other party or parties to renew and levy the tax even if the elected representatives of those governing entities have determined the tax should be permitted to expire. The authority to levy a tax is a legislative function of the state or the local governments created by the state. See, e.g., *Bd. of Commrs. of Taylor County v. Cooper*, supra, 245 Ga. at 253; see also *Phinizy v. Eve*, 108 Ga. 360, 361 (33 SE 1007) (1899) ("[T]he power to tax is exclusively of a legislative character . . . ."). It follows that the issue of whether an existing tax should be renewed or permitted to expire is a legislative issue that is properly left solely to the discretion of the elected legislative body. To the extent the 2010 amendment to the LOST Act permits judicial resolution of the issue of whether LOST should be renewed and the governing bodies of the special district should be required to levy and collect the tax, the amendment violates the separation of powers doctrine of the Constitution.

The question remains whether allocation of the proceeds of the tax, once levied, is a purely legislative issue that cannot be delegated for judicial resolution. In the *Taylor County* case, the taxpayer appellees challenged the local negotiation feature of the LOST Act, as it existed prior to the 2010 amendment, on the ground, inter alia, that it created an unconstitutional delegation of the power to tax. 245 Ga. at 257. This Court rejected that assertion because we determined the local negotiation feature "merely allows the taxing authority to distribute the proceeds within its boundaries" and, further, it was authorized by the constitution. Id. Noting the very fact we are addressing in this case — that the LOST Act does not specifically "direct the division of funds within the authority levying the tax," but left the division to be determined within certain guidelines by the municipalities and the county — this Court concluded it was not necessary for the statute to specify the division of proceeds where, as in this case, the criteria for local determination of the purposes for which tax proceeds may be spent are specifically set forth in the constitution. Id. at 258, n. 8. In *Jackson v. City of College Park*, 230 Ga. App. 487 (496 SE2d 777) (1998), the Court of Appeals construed the local negotiation feature of the LOST Act as it existed prior to the 2010 amendment and addressed the issue of who has authority to allocate LOST revenues upon renewal of the tax. In the *College Park*

case, Fulton County and the qualified municipalities in the LOST district that is coterminous with Fulton County filed a renewal certificate with the revenue commissioner that failed to provide the required percentage of tax proceeds to one of the municipalities that elected to take "absent municipality" status which, pursuant to the statute, entitled that city to a minimum percentage of proceeds based solely on its pro rata proportion of the total population.[7] In response, the revenue commissioner announced his intent to disregard the submitted distribution plan and to distribute taxes based solely on population criteria. College Park then filed a declaratory judgment action seeking a ruling that the Department of Revenue had no authority to impose its own distribution scheme. The trial court entered an order adopting the plan submitted to the court by College Park, but the Court of Appeals reversed the order and ruled, based on Supreme Court cases interpreting the LOST Act, that neither the revenue commissioner nor the trial court had statutory authority to impose a distribution plan for the LOST proceeds. Id. at 489-491. Instead, interpreting the local negotiation feature of the statute prior to the 2010 amendment, the Court of Appeals noted: "Voluntary agreement, not judicial decree, is the only means of producing the necessary 'certificate of distribution.' " Id. at 491.

Subsequently, the LOST Act was amended, and the 2010 amendment purports to add judicial resolution as another means for producing a certificate of distribution, as discussed above. But this Court hereby holds that this new means of determining the distribution of LOST proceeds violates the separation of powers doctrine. This Court has previously held that the question of the benefit of a tax is one that is exclusively left to legislative discretion and "is not a matter for inquiry by the courts" unless there is a manifest abuse of power. See *Speer v. Mayor & Council of Athens*, 85 Ga. 49, 55 (3) (11 SE 802) (1890) (addressing whether the determination that a special benefit was conferred to the property owner in order to justify the levy of a special assessment was subject to judicial review); see also *Greene County Bd. of Commrs. v. Higdon*, 277 Ga. App. 350 (626 SE2d 541) (2006) (finding no abuse of legislative discretion and therefore no grounds on which the trial court could set aside the determination of the local governing authority to assess a tax for the purpose of funding hospital-based care within a special tax district). It follows that issues relating to how tax revenues should be allocated are also left solely to legislative discretion and are not matters for determination by the courts so long as there is no manifest abuse of power or

---

[7] See OCGA § 48-8-89 (b).

failure to abide by constitutional or legislative directives regarding the purposes for which the revenues may be spent.[8] In *Bentley v. Chastain*, 242 Ga. 348 (249 SE2d 38) (1978), this Court held that a statute as well as a county ordinance that provided de novo review of the decisions of the county board of zoning appeals violated the separation of powers doctrine because they purported to empower the courts with authority to readjudicate questions that were committed to the discretion of the board, an administrative agency. Just as in *Bentley*, the scope of judicial review of these parties' allocation of tax proceeds should be limited to that which is "inherent in the power of the judiciary: Whether the [parties] acted beyond the discretionary powers conferred upon [them], abused [their] discretion, or acted arbitrarily or capriciously . . . ." Id. at 352. Judicial review may not be expanded to substitute the court's decision for that of the parties. In this case, we hold that, absent an abuse of discretion or other showing of illegality, the allocation of tax proceeds by and among the political subdivisions of a LOST special district is left to the discretion of those entities and is not a matter for judicial determination.

The scheme set forth in the 2010 amendment improperly authorizes judicial resolution of the allocation and distribution of tax proceeds, an exclusively legislative power.

> [T]he basic principle embodied in the separation of powers doctrine [is] that the legislature cannot delegate legislative power to the courts. . . . Delegation to a court of power to ascertain a state of facts under which a statute is applicable[, however,] is not an unlawful delegation of legislative power to the judiciary.

*Harrell v. Courson*, 234 Ga. 350, 352 (216 SE2d 105) (1975) (citation and punctuation omitted). The *Harrell* case involved a constitutional challenge to the municipal charter dissolution statute which provides for dissolution of a municipal charter upon the occurrence of several conditions. The procedure for dissolution is commenced by petition to the superior court filed by a majority of the voters in the nonfunctioning municipality, and the statute provides that the court may enter an order declaring the municipal corporation dissolved if certain conditions are met. OCGA § 36-30-7. In *Harrell*, this Court rejected the assertion that the dissolution statute violated the separation of powers doctrine by improperly delegating the legislative authority to dissolve municipal corporations to the superior courts.

---

[8] There has been no contention of a manifest abuse of power in this case.

Instead, we held that the statute merely delegated to the superior courts the traditional judicial function of determining the existence of facts which, if found, then triggered the operation of the statute. By attempted analogy, the municipalities argue the 2010 amendment to the LOST Act permits one of the parties to the LOST to set in motion a process whereby the parties submit their best and final offers to the court which acts simply as an arbitrator in what the municipalities refer to as "baseball arbitration."[9] The municipalities assert that the 2010 amendment does not authorize the court to determine the distribution of the tax but requires the court to chose the offer that best satisfies the criteria set forth in subsection (b) of the statute. They argue that the distribution is thus determined by the governing authorities of the political subdivisions involved in the tax and not the court.

We reject the municipalities' argument that the procedure set forth in the 2010 amendment to the statute, like the statute in *Harrell*, merely delegates to the court the traditional function of determining issues of fact by deciding which offer most closely complies with the statutory criteria. First, despite a reference to "baseball arbitration" in the minutes of legislative hearings on the proposed 2010 amendment,[10] subsection (d) (4) does not refer to this process as arbitration. Subsection (d) (3), however, does require nonbinding arbitration if the parties are unable to reach an agreement on the renegotiation of the distribution of tax proceeds within 60 days of the commencement of renegotiation proceedings, demonstrating a recognition that the final decision must be one jointly reached by the parties even if reached pursuant to alternative dispute resolution techniques. We reject the notion that this process should be deemed binding arbitration and that, as such, the process passes constitutional muster.[11] Secondly, unlike the municipal charter dissolution statute that was the subject of scrutiny in the *Harrell* case, the terms of subsection (d) (4) (D) do not require a simple finding

---

[9] "Baseball arbitration" is a unique type of arbitration, first adopted by major league baseball to arbitrate salary disputes, wherein "each party makes his or her 'last best offer' and the sole authority of the arbitrator is to accept one or the other, thus forcing each side toward a middle ground by making a more reasonable and less extreme demand." 21 Williston on Contracts § 57:106 (4th ed.).

[10] Amicus curiae consisting of several Georgia municipalities attached to their brief a certified copy of the minutes from the House Ways and Means Committee meeting for February 2, 2010, referring to House Bill 991 as "LOST; Baseball arbitration."

[11] Arbitration is a matter of contract. *Helms v. Franklin Builders, Inc.*, 305 Ga. App. 863, 865 (700 SE2d 609) (2010). The Georgia Arbitration Code, OCGA § 9-9-1 et seq., references only disputes with respect to which the parties have contractually agreed to submit to arbitration. Appellees have not drawn to our attention any Georgia statutes that require governmental entities or any other parties to submit to binding arbitration to resolve a dispute, and we are

of fact, after which operation of a statute is automatically triggered or not. In adopting one of the offers submitted by the parties, subsection (d) (4) (D) only directs the judge (not referred to as an arbitrator) to "render a decision based on the requirements and intent of paragraph (1) of the subsection and the criteria in subsection (b) of this Code section." Contrary to the assertion of the municipalities, nowhere in the statute is the judge required to determine which offer best complies with the statutory criteria. If it did, this, too, would be a blatant delegation of legislative decision-making to the trial court because it would not call for a factual determination of any fact in dispute but a distribution of tax proceeds based upon what the judge believes to be the appropriate weight to place upon factors that are expressly not limited to the criteria set forth in the statute. Subsection (b) of the LOST Act requires the jointly submitted certificate setting forth the distribution of tax proceeds to "be based upon, but not limited to" a list of eight criteria. Moreover, a determination of which offer best complies with the statute does not appear to be adaptable to objective factual determination but necessarily calls for a subjective weighing of the identified non-exclusive criteria along with other unspecified criteria. In summary, such a determination is a political one, not one that may properly be made by a judicial officer. Due to the unique nature of the joint taxing authority of the political subdivisions within the LOST special district, at least as currently drafted, this determination must be a joint one.[12] In any event, it may not be delegated to a judicial officer.

The General Assembly chose not to impose a rigid formulaic standard for allocation of LOST proceeds but expressly left to the political subdivisions of each special taxing district the task of negotiating an allocation that reflects the needs of the district, a process this Court has already deemed legal and constitutional. See *Taylor County*, supra, 245 Ga. at 257.

> [T]he General Assembly [does not mean to convey] that population as a criterion should be more heavily weighted than other criteria. It is the express intent of the General

---

aware of none. In any event, this begs the question of whether a requirement that the recipients of LOST proceeds engage in binding arbitration would pass constitutional muster, one that is not addressed here.

[12] Compare the local negotiation feature of the district-wide tax created by the LOST Act with the population-based formula for distributing the county tax created by the SPLOST Act (OCGA § 48-8-110 et seq.) if an intergovernmental agreement for funding qualified capital outlay projects is not reached between the county and qualified municipalities.

> Assembly in requiring such renegotiation that eligible political subdivisions shall analyze local service delivery responsibilities and the existing allocation of proceeds made available to such governments under the provisions of this article and make rational the allocation of such resources to meet such service delivery responsibilities.

OCGA § 48-8-89 (d) (1). While this Court recognizes that the procedure set forth in the 2010 amendment represents an attempt to frame a remedy for the mischief created by the impasse that may occur by requiring competing political subdivisions to negotiate and agree upon allocation of the tax "pie," and although we have considered "the old law, the evil, and the remedy,"[13] nevertheless this particular solution does not pass constitutional muster. While the LOST Act requires the political subdivisions to "make rational the allocation" of tax proceeds, there is no one rational manner of allocating LOST proceeds within the broad parameters and nonexclusive criteria set forth in the Act. Accordingly, the 2010 amendment effectively requires the superior court to choose which offer is "more rational" than the other. This is not a permissible scope of judicial review.

In reaching this holding this Court has considered the rule that "[t]he separation of powers doctrine is sufficiently flexible to permit practical arrangements in a complex government." *Ward v. City of Cairo*, 276 Ga. 391, 393 (2) (a) (583 SE2d 821) (2003). But the facts of this case are substantially distinguishable from those in *Ward*, in which we held that statutory provisions requiring the governing authority's approval in order for the state and municipal court to select and contract with a private probation service provider did not violate the separation of powers doctrine. This Court is also mindful of the longstanding rule, relied upon by the municipalities, that "[w]e should go at a snail's gait in declaring legislative enactments, and especially tax acts, upon which the very life of the State depends, unconstitutional and void." *Wright v. Hirsch*, 155 Ga. 229, 233 (1) (116 SE 795) (1923) (rejecting a constitutional challenge to certain occupation taxes on the ground that they purportedly violated uniformity standards). Further, this Court presumes the acts of the General Assembly are constitutional and construe those acts as valid when possible. *Judicial Council of Ga. v. Brown & Gallo, LLC*, 288 Ga. 294, 297 (702 SE2d 894) (2010); see also *Bennett v. Wheatley*, 154 Ga. 591,

---

[13] When construing a statute, the courts are to "look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." OCGA § 1-3-1 (a).

594 (1) (115 SE 83) (1922) ("[D]oubt should be resolved in favor of the constitutional validity of legislation."). But in this case we are not invalidating a tax and not striking the LOST Act or its terms for how the tax may be levied or for what purposes the proceeds may be applied. We are striking only the 2010 amendment, codified at OCGA § 48-8-89 (d) (4), which effectively grants judicial resolution of the allocation and distribution of tax proceeds, a process that we deem to be a clear violation of the separation of powers doctrine. Contrary to the assertion of the municipalities, this holding does not expand or violate this Court's standards for constitutional review of legislative acts.[14] In sum, the trial court erred when it denied Turner County's motion to dismiss and sustained the constitutionality of the 2010 amendment to OCGA § 48-8-89 and so its order on said motion is reversed. The order on the municipalities' petition, entered pursuant to OCGA § 48-8-89 (d) (4), is vacated. Having determined that the 2010 amendment to the LOST Act is unconstitutional and void, Turner County's remaining enumerations of error are moot.

In supplemental briefs, the parties urge that, in the event the Court holds the "baseball arbitration" provision of the LOST statute unconstitutional, the Court should then fashion an equitable remedy that permits them additional time to renegotiate a new tax certificate. It is not the role of the courts, however, to legislate alternative procedures to replace those promulgated by the General Assembly that are deemed to be unconstitutional.

*Judgment reversed in part and vacated in part. All the Justices concur.*

DECIDED OCTOBER 7, 2013.

*Elliott, Blackburn & Gooding, James L. Elliott, Walter G. Elliott II*, for appellant.

*Perry & Walters, Franklin T. Coleman III, Robert K. Raulerson, James V. Davis*, for appellees.

*Smith, Welch, Webb & White, Andrew J. Welch III, A. J. Welch, Jr., Coleman Talley, George T. Talley, Edward F. Preston, Lambert,*

---

[14] We also reject the argument that Turner County did not properly preserve this constitutional challenge. The record reflects the separation of powers issue was raised below and the trial court ruled on it in the order denying the motion to dismiss.

*Reitman & Abney, Joseph Reitman, Jr., Haygood, Lynch, Harris & Melton, C. Robert Melton, James F. Grubiak, Susan J. Moore, Rusi C. Patel, James Burgess*, amici curiae.