303 Ga. 449
FINAL COPY

S17A1878, S17X1879. CITY OF UNION POINT v. GREENE COUNTY et al.; and vice versa.

BOGGS, Justice.

This dispute between Greene County and the City of Union Point arises out of the Service Delivery Strategy Act ("SDS Act"), OCGA § 36-70-20 et seq., and calls into question the constitutionality of the evidentiary hearing process provided by OCGA § 36-70-25.1 (d) (2). In its order entered at the end of the hearing process, the trial court found that portion of the statute unconstitutional, and further found that sovereign immunity barred all claims and remedies except those provided for in the SDS Act itself. We affirm the trial court's ruling on sovereign immunity, but reverse its finding on the constitutionality of OCGA § 36-70-25.1 (d) (2). We further find that the trial court exceeded the bounds of the statutory process by going beyond the remedies provided to order particular actions by the parties and by considering matters not submitted to mediation. We therefore affirm in part, reverse in part,

vacate the trial court's order in part, and remand for entry of an appropriate order.

The SDS Act was enacted in 1997.[1] The General Assembly declared that the Act is intended

> to provide a flexible framework within which local governments in each county can develop a service delivery system that is both efficient and responsive to citizens in their county. The General Assembly recognizes that the unique characteristics of each county throughout the state preclude a mandated legislative outcome for the delivery of services in every county. The process provided by this article is intended to minimize inefficiencies resulting from duplication of services and competition between local governments and to provide a mechanism to resolve disputes over local government service delivery, funding equity, and land use. The local government service delivery process should result in the minimization of noncompatible municipal and county land use plans and in a simple, concise agreement describing which local governments will provide which service in specified areas within a county and how provision of such services will be funded.

OCGA § 36-70-20. The SDS Act prescribes a process for developing a local government service agreement, OCGA § 36-70-21, its required components, OCGA § 36-70-23, and criteria for its development, OCGA § 36-70-24.

The SDS Act was amended in 2000 to add OCGA § 36-70-25.1.[2] This

---

[1] See Ga. L. 1997, p. 1567, § 1.

[2] See Ga. L. 2000, p. 1439, § 1.

2

statute provides a "mechanism to resolve disputes" between a county and its municipalities, beginning with "some form of alternative dispute resolution" under subsection (c), "the imposition of sanctions" by the limitation of funding for "any local government or authority which is not included in a department verified strategy or for any project which is inconsistent with such strategy" pursuant to OCGA § 36-70-27, and mandatory mediation under subsection (d) (1). If all these provisions fail to resolve a dispute, subsection (d) (2) provides:

> If no service delivery strategy has been submitted for verification to the Department of Community Affairs at the conclusion of the mediation, any aggrieved party may petition the superior court and seek resolution of the items remaining in dispute. The visiting or senior judge shall conduct an evidentiary hearing or hearings as such judge deems necessary and render a decision with regard to the disputed items. In rendering the decision, the judge shall consider the required elements of a service delivery strategy with a goal of achieving the intent of this article as specified in Code Section 36-70-20. It shall be in the discretion of the judge to hold the sanctions specified in Code Section 36-70-27 against one or more of the parties in abeyance pending the disposition of the action. The court is authorized to utilize its contempt powers to obtain compliance with its decision relating to the disputed items under review. The judge shall be authorized to impose mediation costs and court costs against any party upon a finding of bad faith.

In October 1999, pursuant to the SDS Act, Greene County and five municipalities within the County, including the City of Union Point, entered into various intergovernmental agreements governing local services. These

agreements were incorporated into a service delivery strategy and filed with the Georgia Department of Community Affairs.[3] The service delivery strategy was amended from time to time, most substantially in 2004.

The litigation before us began on October 21, 2015, when the City of Union Point filed a "Complaint for TRO, Interlocutory and Permanent Injunction," alleging that Greene County had unilaterally discontinued police and fire dispatch and communications services to the City's police and fire departments and had ignored attempts to resolve the issue. The trial court entered a temporary restraining order directing the County to resume dispatch and communications services. A month later, in response to a motion to dismiss, the City amended its complaint to seek a declaratory judgment and mediation under OCGA §§ 36-70-28 (c)[4] and 36-70-25.1 (d). After the County filed a

---

[3] The SDS Act itself, the parties, and the forms used to file the service delivery strategy with the Department of Community Affairs refer to the underlying agreements between the parties interchangeably as "service delivery agreements," "service delivery arrangements," "intergovernmental contracts," and "intergovernmental agreements." Each such agreement contained in the record here is styled "Intergovernmental Agreement."

[4]      In the event that a county or an affected municipality located within the county refuses to review and revise, if necessary, a strategy in accordance with paragraphs (2) and (3) of subsection (b) of this Code section, then any of the parties may use the alternative dispute resolution and appeal procedures set forth in subsection (d) of Code Section 36-70-25.1.

4

second motion to dismiss on the grounds of sovereign immunity, standing, and untimely request for mediation, the City again amended its complaint to assert claims for breach of contract, mandamus, specific performance, injunction and attorney fees, and attached a certified copy of the service delivery agreements on file with the Georgia Department of Community Affairs.

On January 12, 2016, the trial court entered a consent order assigning the dispute to mediation pursuant to OCGA § 36-70-25.1 (d) (1) (A), staying all other proceedings in the case, directing the County to continue to provide dispatch and communications services until the end of the mediation period, and adding the City of Greensboro as a necessary party to the mediation under OCGA § 36-70-25.1 (d) (1) (B). The dispute went to mediation, where the parties reached agreement "in principle" on a number of issues, but were unable to resolve the dispute regarding dispatch and communications services. At the petition of the City, as provided for in the consent order, the trial court proceeded to an evidentiary hearing under OCGA § 36-70-25.1 (d) (2).

After hearing two days of testimony and argument and receiving approximately 1,750 pages of documentary evidence, the trial court issued a 46-page "Final Order." In that order, the trial court concluded that OCGA § 36-70-

25.1 (d) (2) is unconstitutional and void because it violates the separation of powers clause of the Georgia Constitution.[5] While finding that the rest of the parties' contentions therefore were moot, the trial court "for purposes of judicial economy" nevertheless ruled on those issues. It found that sovereign immunity barred "the claims not grounded in the relief provided under the SDS Act" (emphasis in original), ruled with respect to pending motions and other procedural issues, and then ruled on the parties' numerous claims regarding the funding of public services under the SDS Act.

In its order, the trial court made findings of fact regarding various services provided by the County, the source of funding for those services, and whether those services were provided to residents of the municipalities in the County or to residents of unincorporated areas, or both. It then applied the relevant statutory provisions to the facts and determined the legally permissible sources of funding for those services. It found that certain services were in compliance with the SDS Act, while others were not.[6] It also found that the County had

---

[5] "The legislative, judicial, and executive powers shall forever remain separate and distinct; and no person discharging the duties of one shall at the same time exercise the functions of either of the others except as herein provided." Ga. Const. 1983, Art. I, Sec. II, Par. III.

[6] The trial court found that "Greene County's use of countywide funds for Greene County's roads program is in compliance with the SDS Act."

6

breached certain terms of the underlying agreements. While concluding in some instances that the parties must enter into a joint agreement for service and funding, the court also gave specific direction with regard to funding, requiring that certain services be funded from particular sources, and enjoining the funding of those services from other sources, as well as enjoining the collection of fees until an agreement is reached, and directing that certain fees be refunded.

The City appeals from the trial court's finding that OCGA § 36-70-25.1 (d) (2) is unconstitutional, its finding that sovereign immunity barred most of the City's claims, and its specific findings with respect to funding for road and bridge maintenance. The County cross-appeals, contending that sovereign immunity barred the trial court's grant of injunctive relief, and further contending that the trial court erred in its specific findings with respect to the funding and delivery of emergency dispatch services, recreation and library services, and the refund of certain grant matching funds.[7]

1. We first consider the trial court's ruling on sovereign immunity. The Georgia Constitution provides:

---

[7] Lowndes County, the City of Valdosta, the City of Greensboro, the Georgia Municipal Association with the Mayor and Aldermen of the City of Savannah, and the Attorney General have filed briefs amici curiae. The Court appreciates their helpful and informative briefing.

Except as specifically provided in this Paragraph, sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.

Ga. Const. Art. I, Sec. II, Par. IX (e). This Court has repeatedly ruled on the scope of this provision. "The plain and unambiguous text of the 1991 constitutional amendment shows that only the General Assembly has the authority to waive the State's sovereign immunity." (Citations omitted.) Ga. Dept. of Natural Resources v. Center for a Sustainable Coast, 294 Ga. 593, 599 (2) (755 SE2d 184) (2014).

> In addressing this issue, we recognize that implied waivers of governmental immunity should not be favored, but also that this does not mean that the Legislature must use specific "magic words" such as "sovereign immunity is hereby waived" in order to create a specific statutory waiver of sovereign immunity.

(Citations and punctuation omitted.) Ga. Dept. of Corrections v. Couch, 295 Ga. 469, 473-474 (2) (759 SE2d 804) (2014).

(a) The only potential parties to an action under OCGA § 36-70-25.1 are counties and affected municipalities. "Indeed, in order for the statute to have any meaning at all here, it can only be interpreted as creating a waiver of sovereign immunity." Colon v. Fulton County, 294 Ga. 93, 96 (1) (751 SE2d 307) (2013),

8

overruled on other grounds, <u>Rivera v. Washington</u>, 298 Ga. 770, 778 (784 SE2d 775) (2016). "Because the General Assembly is presumed to intend something by passage of an act, we must construe its provisions so as not to render it meaningless." (Citations and punctuation omitted.) Id.

But here, as the trial court correctly held, sovereign immunity is waived *only to the extent of the statute*, which extends no further than the remedies specifically authorized by the Act. Therefore, as discussed in Division 2, below, the trial court may not exceed the scope of OCGA § 36-70-25.1 (d) (2) by granting relief not provided therein for claims brought under the SDS Act. We therefore affirm the trial court's ruling that sovereign immunity does not bar claims under OCGA § 36-70-25.1 (d) (2).

(b) Not all of the claims in the case below, however, arise under the SDS Act. More specifically, the City asserted claims for breaches of existing intergovernmental agreements ("IGAs") with the County, seeking injunctive relief to compel the County to abide by the IGAs. The SDS Act, however, does not generally address the enforcement of existing IGAs, even if they originally were made or are subject to revision under the terms of the Act. It provides no remedy to a county or city aggrieved by the breach of an IGA; the only

9

provision of the Act that affects the enforcement of an existing agreement is the provision of OCGA § 36-70-27 (a) (1) that state funds cannot be used for a project inconsistent with a "department verified strategy" made under the Act. There is no reason to conclude, therefore, that the SDS Act supersedes other remedies available to a county or city for breach of an IGA.

Apart from the SDS Act, violations of IGAs generally may be addressed by the courts as breaches of contract. See Chattanooga-Hamilton County Hosp. Auth. v. Walker County, 702 Fed. Appx. 854, 856 (II) (B) (11th Cir. 2017). In such cases, the General Assembly has provided an express constitutional waiver of sovereign immunity: "The state's defense of sovereign immunity is hereby waived as to any action ex contractu for the breach of any written contract now existing or hereafter entered into by the state or its departments and agencies." Ga. Const. Art. I, Sec. II, Par. IX (c). See State of Ga. Dept. of Corrections v. Developers Surety and Indem. Co., 295 Ga. 741, 744 (763 SE2d 868) (2014); see also City of Waycross v. Pierce County Bd. of Commrs., 300 Ga. 109, 113 (1) (793 SE2d 389) (2016); Upper Oconee Basin Water Auth. v. Jackson County, 305 Ga. App. 409, 412 (1) (699 SE2d 605) (2010).

"Restitution, damages and specific performance are the three remedies for

breach of contract. [Cit.]" PMS Constr. Co. v. DeKalb County, 243 Ga. 870, 872 (2) (257 SE2d 285) (1979). Accordingly, to the extent that the City sought injunctive relief in this case that is directed to the enforcement of existing IGAs and would amount to a remedy of specific performance, such relief is within the scope of the constitutional waiver of sovereign immunity for breach of contract and may be considered on remand. To the extent, however, that the injunctive relief sought by the City would do more than command the specific performance of existing IGAs, it is not an appropriate remedy for breach of contract and does not fall within the Constitution's waiver of sovereign immunity. See Sustainable Coast, supra, 294 Ga. at 596 (2) (injunctive relief); Olvera v. Univ. System of Ga. Bd. of Regents, 298 Ga. 425, 427 (782 SE2d 436) (2016) (declaratory judgment).

2. Next, we address the trial court's holding that the dispute resolution process prescribed by OCGA § 36-70-25.1 (d) (2) is unconstitutional. In so doing, we are mindful that "the General Assembly is presumed to enact laws with full knowledge of the condition of the law and with reference to it, and the courts will not presume that the legislature intended to enact an unconstitutional law." (Citation and punctuation omitted.) Ga. State Licensing Bd. for

11

Residential and General Contractors v. Allen, 286 Ga. 811, 817 (2) (692 SE2d 343) (2010). And

> [i]n analyzing whether the statute violates the separation of powers doctrine of our state constitution we note at the outset the presumption that acts of the legislature are constitutional, and our duty to construe an act as constitutional where possible. We also note that while our state constitution's doctrine of separation of powers declares that the three branches of government shall be separate and distinct, the doctrine does not mean a separation in all respects.

(Citations and footnotes omitted.) Ga. Dept. of Human Resources v. Word, 265 Ga. 461, 463 (1) (458 SE2d 110) (1995).

In its order, the trial court relied entirely upon this Court's decision in Turner County v. City of Ashburn, 293 Ga. 739 (749 SE2d 685) (2013), holding that the dispute resolution process included in the Local Option Sales Tax ("LOST") Act, former OCGA § 48-8-89 (d) (4), violated the separation of powers doctrine by authorizing "judicial resolution of the allocation and distribution of tax proceeds, an exclusively legislative power." Id. at 745. The prescribed process for resolution of a local option sales tax dispute under former OCGA § 48-8-89 (d) provided for a negotiated allocation of LOST proceeds between a county and its qualified municipalities, followed by nonbinding arbitration. If that process failed to produce an agreement, any party could

12

petition the superior court for a resolution under former OCGA § 48-8-89 (d) (4). To this point, as the trial court observed in its order, the two statutory procedures are remarkably similar. Once the superior court is reached, however, the process in the statutory provision before us is significantly different.

The former statute provided that, if the parties could not agree on the distribution of sales tax proceeds, they were to "submit their written best and final offer specifying the distribution of the tax proceeds" to the superior court. The superior court would then "render a decision based on the requirements and intent" of the statute and certain non-exclusive criteria listed therein. The court would then prepare a "distribution certificate," a document ordinarily created by agreement of the parties receiving the tax proceeds, and file that certificate with the Commissioner of Revenue.[8] Former OCGA § 48-8-89 (d) (4) (D).

In analyzing this process, this Court observed that the authority to impose taxation is a legislative function of the state or local government, and that the decision to renew an existing tax or allow it to expire is a purely legislative issue

---

[8] Former OCGA § 48-8-89 (b) provided that the distribution certificate "shall be executed in behalf of each respective governing authority . . . shall encompass all respective political subdivisions, shall be filed with the commissioner, and shall specify by percentage that portion of the remaining proceeds of the tax available for distribution which each such political subdivision shall receive. . . ."

left solely to the elected legislative body's discretion. <u>Turner</u>, supra, 293 Ga. at 743. Moreover, the question of distribution of the proceeds of a tax is also exclusively a legislative decision and cannot be decided by the judiciary unless there is a manifest abuse of power. Id. at 744. Finally, we explained:

> It follows that issues relating to how tax revenues should be allocated are also left solely to legislative discretion and are not matters for determination by the courts so long as there is no manifest abuse of power or failure to abide by constitutional or legislative directives regarding the purposes for which the revenues may be spent.

Id. at 745-746.

Applying these principles, this Court concluded that former OCGA § 48-8-89 (d) (4) authorized the superior court to go beyond a factual determination of matters in dispute and to allocate tax proceeds based upon its own weighing of an indefinite number of factors, substituting its judgment for that of the parties. Id. at 747. The decision addressed in <u>Turner</u> is therefore a legislative one, beyond the scope of judicial power, and "effectively grants judicial resolution of the allocation and distribution of tax proceeds, a process that we

14

deem to be a clear violation of the separation of powers doctrine." Id. at 749.

In contrast, the referral to the superior court under OCGA § 36-70-25.1 (d) (2) contains important distinctions from the one disapproved in Turner. After an evidentiary hearing, the trial court renders a decision "with regard to the disputed items," and "shall consider the required elements of a service delivery strategy with a goal of achieving the intent of this article as specified in Code Section 36-70-20." The latter Code section is a general statement of legislative intent that the process prescribed by the SDS Act as a whole "should result . . . in a simple, concise agreement describing which local government will provide which service in specified areas within a county and how provision of such services will be funded." OCGA § 36-70-25.1 does not authorize the trial court to implement, in its own discretion, these broad, aspirational goals. Rather, the General Assembly provided criteria which "shall be met" in developing the service delivery strategy, including those specifically prescribed in OCGA § 36-70-24 (3) (A) with respect to the matters in dispute here. That subsection provides that a service delivery strategy

> shall ensure that the cost of any service which a county provides primarily for the benefit of the unincorporated area of the county shall be borne by the unincorporated area residents, individuals, and property owners who receive the service. Further, when the county

15

and one or more municipalities jointly fund a county-wide service, the county share of such funding shall be borne by the unincorporated residents, individuals, and property owners that receive the service.

These criteria are limited and specific, unlike the non-exclusive and open-ended criteria disapproved in Turner. And after the trial court makes its findings, in direct contrast to the procedure held unconstitutional in Turner, the court is not instructed to craft an agreement or to file an agreement with any department of the state. Instead, the local government entities continue their negotiation and preparation of a service delivery strategy and related agreements. The trial court's power is limited to the abeyance or allowance of sanctions, its contempt authority, or the imposition of costs upon a finding of bad faith. OCGA § 36-70-25.1 (d) (2).

As Turner acknowledges:

> We recognize the basic principle embodied in the separation of powers doctrine that the legislature cannot delegate legislative power to the courts. This does not mean, however, that the legislature is forbidden from conferring power on the courts to ascertain whether the statutory requirements . . . have been satisfied in particular cases. Delegation to a court of power to ascertain a state of facts under which a statute is applicable is not an unlawful delegation of legislative power to the judiciary.

(Punctuation omitted.) Harrell v. Courson, 234 Ga. 350, 352 (216 SE2d 105)

16

(1975), cited in Turner, supra, 293 Ga. at 745. OCGA § 36-70-25.1 does not authorize the court to substitute its judgment for that of the county and municipalities with regard to the creation of a service delivery agreement, nor to adopt one party's interpretation to the exclusion of another, and enter that in the form of a final agreement. It therefore does not usurp legislative or taxing functions, as forbidden in Turner. The court is directed only to receive the parties' evidence and resolve disputed issues of fact regarding the services provided and the funding of such services, and to determine whether such services and funding comply with the provisions of the law. This process does not amount to an unconstitutional violation of the separation of powers doctrine.

Moreover, OCGA § 36-70-25.1 (d) (2), unlike the provision disapproved in Turner, does not permit the trial court to direct that the parties enter into a particular agreement. It therefore does not invade the province of the legislative branch by imposing a tax or allocating the proceeds of that tax, as forbidden by Turner. The responsibility remains with the parties to enter into and implement a service agreement that complies with the law. See OCGA § 36-70-25.1 (f). None of the trial court's actions go beyond those powers generally inherent in the judiciary. See Ga. Const. 1983, Art. VI, Sec. I, Par. IV ("Each court may

17

exercise such powers as necessary in aid of its jurisdiction or to protect or effectuate its judgments[.]"); Cobb County v. Wilson, 259 Ga. 685, 686 (2) (b) (386 SE2d 128) (1989) (trial court authorized to use contempt powers to compel county to comply with zoning code).

However, as the City concedes, the trial court is not authorized to grant relief pursuant to OCGA § 36-70-25.1 beyond the scope of the remedies made available in that Code section. In its order, the trial court enjoined the County from collecting and expending revenues derived from special tax districts with respect to fire protection, library, and recreation services; enjoined the County from funding animal control, building inspection, and planning and zoning services with county revenues from the incorporated areas of the county; permanently enjoined the County from imposing fees on the City of Union Point for emergency dispatch services; and ordered the County to refund certain taxes collected if no agreement was reached. In so doing, the trial court improperly directed or enjoined particular funding for services; this exceeded the scope of the remedies provided for by the SDS Act. But the fact that the trial court exceeded the limited boundaries of the statutory process does not render the statute itself unconstitutional. Rather, those portions of the trial court's order

18

that grant relief exceeding the authority granted under the statute must be vacated, and the case returned to the trial court for further proceedings in conformity with this opinion.

3. The parties have appealed and cross-appealed from certain specific findings entered by the trial court.

(a) The City appeals from the trial court's findings with regard to the funding of road and bridge maintenance. But OCGA § 36-70-25.1 (d) (2) provides that "any aggrieved party may petition the superior court and seek resolution of the items remaining in dispute" after the parties fail to agree to a service delivery strategy in the mandatory mediation provided by subsection (d) (1). A party is not authorized by the statute to introduce items that were never in dispute at the mediation into its petition to superior court. As the County observes, the mediator's report contains no mention of road and bridge maintenance, nor did the parties expressly note that issue in the consent order to mediation. The judicial resolution of this issue was not authorized under the statute until the parties have complied with the two-step process prescribed by the statute and first submitted the question of road and bridge maintenance funding to mediation. This portion of the trial court's order therefore exceeded

19

the scope of OCGA § 36-70-25.1 (d) (2), and it must be reversed.

(b) In its cross-appeal, the County contends the trial court erred in permanently enjoining the County from imposing fees on the City for emergency dispatch services and in mandating the use of a particular technology for delivering those services. As noted above, we agree that the trial court's remedies in the process prescribed by OCGA § 36-70-25.1 (d) (2) are limited to those authorized therein. With respect to its decision under the Act, therefore, after making findings of fact and applying the statutory criteria to the facts as authorized by the statute, the trial court could employ only those remedies provided for by the statute. It had no authority to issue a permanent injunction as to the funding or the method of providing those services. Moreover, the trial court was not authorized to fashion a remedy of its own for the dispute between the County and City regarding the funding of these services; it could only find the relevant facts and apply the law to those facts. It is then authorized to use only the remedies enumerated in OCGA § 36-70-25.1 (d) (2) "to obtain compliance" from the parties in reaching a service delivery agreement: hold statutory sanctions in abeyance (or allow them), employ its contempt powers, and assess costs against a party acting in bad faith. We therefore reverse the trial

20

court's order with respect to emergency dispatch services, and we remand for entry of an order consistent with this opinion.[9]

(c) The County also contends in its cross-appeal that the trial court erred in its decision with regard to the funding of recreation and library services. In its order, the trial court found that the County had unilaterally cancelled the previously existing agreement with respect to those services. It further found that the County by resolution created new special districts for those services, "coterminous with the geographic boundary of Greene County, Georgia," authorized the County to levy taxes within that district, and did levy such taxes upon county residents, including those within municipalities. After first noting that the parties had failed to enter "a written agreement" with respect to these services, the trial court concluded that the County breached the terms of the current service delivery strategy agreement, and that its unilateral creation of taxing districts was "not in compliance with the SDS Act. OCGA § 36-70-24 (3)." It then directed that, until the parties officially adopt a new agreement,

_____

[9] We note that, in reaching its decision on this question, the trial court relied in part on OCGA § 46-5-120 et seq., the "Georgia Emergency Telephone Number 9-1-1 Service Act of 1977." While it cited this Act, however, the court's order recites that its ruling was made under the provisions of OCGA § 36-70-25.1 (d) (2), and we review the order only with respect to that Code section and do not decide or rule upon any other claims that may exist upon remand, such as the breach of contract claims discussed in Division 1 (b), supra.

"recreation and library services have been and must remain jointly-funded services." It further directed that the County fund its share of the services "through formation of a special service district consisting of only the unincorporated area of the County." Finally, it declared that "[t]he County may not subsidize its portion of the cost for such services with any tax, fee or assessment levied in any city."

The County first complains that the trial court exceeded its authority under the Act by finding it in breach of contract and by imposing declaratory and injunctive relief. As we have noted above, the trial court was not authorized to impose a remedy not provided by OCGA § 36-70-25.1 (d) (2) for claims brought under the Act. It had no authority under the Act to fashion a different remedy or enjoin the parties as to the funding or the method of provision of those services.[10]

The County also complains that the parties agreed in mediation to the changes in recreation and library funding, as memorialized in the mediator's report, and that its creation of the special districts and certain actions taken by the parties to alter the existing funding mechanisms were "steps consistent with

_____

[10] This does not, however, foreclose other remedies upon remand, as discussed in Division 1 (b), above.

effectuating that agreement following mediation." Although the parties reached a specific and detailed agreement in mediation with regard to these services, the trial court was correct in concluding that an agreement was never reduced to a service delivery strategy or approved under OCGA § 36-70-25. Nevertheless, in the dispute resolution process provided by OCGA § 36-70-25.1 (d) (2), the trial court is limited to the actions and remedies outlined in that Code section, and it was not authorized to adopt any agreement made "in principle" or partially performed by the parties outside the framework of the statute, as that would again run afoul of the limitations described in Turner, as noted above.

We therefore reverse the trial court's order with respect to recreation and library services, and we remand for further proceedings consistent with this opinion.

Judgments affirmed in part, reversed in part, and vacated in part and cases remanded with direction. All the Justices concur, except Melton, P. J., Benham and Hunstein, JJ., who concur in part and dissent in part.

PETERSON, Justice, concurring.

I join the majority's conclusion in Division 2 that the Service Delivery

23

Strategy Act (the "Act") does not violate the separation of powers doctrine. I write separately to observe that the precise source of that doctrine as applied to local governments is less than entirely clear.

As both the majority and dissent discuss, this Court has previously considered a separation of powers challenge similar to the one at issue here — where a statute provided for a judicial resolution of a dispute between a county government and a municipality. See Turner County v. City of Ashburn, 293 Ga. 739 (749 SE2d 685) (2013). In Turner County, this Court held that the dispute resolution process included in the Local Option Sales Tax Act, former OCGA § 48-8-89 (d) (4), violated the "separation of powers doctrine of the Georgia Constitution of 1983, Art. I, Sec. II, Par. III." See Turner County, 293 Ga. at 742-749. But Turner County failed to acknowledge that we have long held that Art. I, Sec. II, Par. III of the Georgia Constitution (the "Separation of Powers Clause") is inapplicable to counties and cities, and instead applies only to state government.

In 1910, this Court interpreted the Separation of Powers Clause in the 1877 Constitution (identical to our current version except for minor punctuation changes) and concluded that it relates to "[s]tate legislative, judicial, and executive powers, and has no relation to municipal offices, created by the

24

legislature, in the discharge of strictly municipal functions." Ford v. Mayor & Council of Brunswick, 134 Ga. 820, 821 (68 SE 733) (1910). We have since applied that holding to our current 1983 Constitution; in Building Authority of Fulton County v. State, we cited Ford and again concluded that the Clause applies only to the state, not to cities or counties. "Nor could it, since a county commission is both the executive and legislative branch." 253 Ga. 242, 247 (5) (321 SE2d 97) (1984). Applying this precedent, we similarly rejected a claim in 2003 that a city was controlling a municipal court's daily activities in violation of the Separation of Powers Clause. See Ward v. City of Cairo, 276 Ga. 391, 392-393 (1) (583 SE2d 821) (2003).

I do not know how to reconcile our holding in Turner County with our holdings in Ford, Building Auth. of Fulton County, and Ward. And we did not attempt to do so in Turner County; there, we cited only Ward, did not acknowledge its holding regarding the scope of the Separation of Powers Clause, and simply distinguished it as factually different. Turner County, 293 Ga. at 748.

Superior court judges exercise the state's judicial power, and thus are subject to the Separation of Powers Clause even under Ford and its progeny. But if the Separation of Powers Clause applies only to the exercise of state powers,

it's difficult to see how that Clause is implicated by allegations — like those here — that a superior court judge is simultaneously exercising state judicial power and local legislative power.

At the same time, it's possible that separation-of-powers principles are found in more than simply the Separation of Powers Clause; like the United States Constitution (which lacks such a Clause), they may also arise from the nature and structure of the Georgia Constitution. Whether they do, and how such principles might apply to local governments (which have their own very complicated article of the Georgia Constitution), is not a question we must answer today. The majority opinion properly concludes that the power the Act calls judges to exercise is merely judicial power, and thus does not contravene the separation of powers. I agree.

I am authorized to state that Justice Blackwell joins in this concurrence.

BENHAM, Justice, concurring in part and dissenting in part.

I concur with Division 1 of the majority's opinion addressing the sovereign immunity issue raised in this appeal. I dissent, however, with respect to Divisions 2 and 3, and would hold that OCGA § 36-70-25.1 is unconstitutional because it improperly delegates purely legislative issues to the trial court for judicial resolution.

The majority characterizes the issue posed in this case as one involving the evidentiary hearing process set forth in OCGA § 36-70-25.1. What is, in my opinion, unconstitutional is not the evidentiary hearing process set forth in the statute but the judicial resolution it authorizes.

The majority opinion points to some obvious differences between the judicial resolution statute involved in this case and the one included in the Local Option Sales Tax ("LOST") Act involved in *Turner County v. City of Ashburn*, 293 Ga. 739 (749 SE2d 685) (2013), which this Court deemed to be unconstitutional. The judicial resolution statute formerly included in the LOST Act (former OCGA § 48-8-89 (d) (4) (D)) provided that if the parties did not arrive at an agreement for allocating LOST proceeds after engaging in nonbinding arbitration, then any party could petition the superior court for a resolution. Pursuant to this former statute, each party submitted to the trial court its best and final offer, the trial court adopted the offer of one of the parties, and the trial court then prepared a tax distribution certificate for the parties and submitted it to the Commissioner of Revenue. Id. As noted by the majority, this Court concluded that the judicial resolution procedure set forth in former OCGA § 48-8-89 (d) (4) (D) improperly invaded the legislative function that is reserved to the elected legislative body. Granted, the judicial resolution

27

procedure authorized by the Service Delivery Strategy Act ("SDS Act") does not authorize a trial court judge to choose between one or the other of the parties' proposed solutions to a dispute, and it does not authorize a judge to submit to the Department of Community Affairs a service delivery strategy as the parties are required to do pursuant to the terms of the Act. Practically speaking, however, I see little difference between the authority of the former LOST Act to pick a sales tax solution proposed by one of the parties and the authority of the SDS Act to "render a decision" with respect to items remaining in dispute between governmental entities who are required to reach an agreement for a service delivery strategy.

OCGA § 36-70-25.1 authorizes a trial court judge "to utilize its contempt powers to obtain compliance with its decision relating to the disputed items under review." In this case, those items include not simply whether the County must provide emergency dispatch services under the communications system it has developed to Union Point and at what cost; they also include animal control, building inspection, planning and zoning, roads maintenance, recreation, libraries, and fire protection. From the record, it appears the parties reached an agreement at mediation as to the service delivery strategy regarding some of these items but that agreement apparently fell apart. The issues in dispute

28

involve not simply a resolution of how Union Point should pay for these services, but whether the County will enter into contracts to provide these services to Union Point at all. These issues have not been resolved between the parties, and no service delivery strategy has been agreed upon with respect to these governmental services. What decision is the trial court authorized to render, then, if not a decision as to, for example, "[a]n assignment of which local government or authority, pursuant to the requirements of this article, will provide each service, [etc.]," or the "source of funding for each service," or "the mechanisms to be utilized to facilitate the implementation of the services and funding responsibilities" as set forth in OCGA § 36-70-23? These are legislative and even political decisions that are outside the purview of the judiciary to decide. As I see it, the judicial resolution clause of OCGA § 36-70-25.1 runs afoul of the separation of powers doctrine espoused by the State's Constitution. See Ga. Const. of 1983, Art. I, Sec. II, Par. III.

I am authorized to state that Presiding Justice Melton and Justice Hunstein join in this dissent.

Decided March 15, 2018 — Reconsideration denied March 29, 2018.

OCGA § 36-70-25.1 (d) (2); constitutional question. Greene Superior Court. Before Judge Flanders, Senior Judge.

Smith, Welch, Webb & White, Andrew (Andy) J. Welch III, Warren M. Tillery, Brandon F. Palmer; Lambert, Reitman and Abney, M. Joseph Reitman, Jr., for appellants.

Jarrard & Davis, Angela E. Davis, Christopher J. Hamilton, Kenneth P. Robin, for appellees.

Larry W. Ramsey, Jr., Kelly J. L. Pridgen, G. Joseph Scheuer; Elliott, Blackburn & Gooding, Walter G. Elliott II, James L. Elliott, William G. Elliott II; Rusi C. Patel; Fleming & Nelson, Barry A. Fleming, F. Adam Nelson; Coleman Talley, George T. Talley, Edward F. Preston, Timothy M. Tanner; Christopher M. Carr, Attorney General, W. Wright Banks, Jr., Senior Assistant Attorney General, Julie A. Jacobs, Sarah L. Crile, Assistant Attorneys General, amici curiae.