Peterson, Justice, concurring.
I join the majority's conclusion in Division 2 that the Service Delivery Strategy Act (the "Act") does not violate the separation of powers doctrine. I write separately to observe that the precise source of that doctrine as applied to local governments is less than entirely clear.
As both the majority and dissent discuss, this Court has previously considered a separation of powers challenge similar to the one at issue here-where a statute provided for a judicial resolution of a dispute between a county government and a municipality. See Turner County v. City of Ashburn, 293 Ga. 739, 749 S.E.2d 685 (2013). In Turner County, this Court held that the dispute resolution process included in the Local Option Sales Tax Act, former OCGA § 48-8-89 (d) (4), violated the "separation of powers doctrine of the Georgia Constitution of 1983, Art. I., Sec. II, Par. III." See Turner County, 293 Ga. at 742-749, 749 S.E.2d 685. But Turner County failed to acknowledge that we have long held that Art. I., Sec. II, Par. III of the Georgia Constitution (the "Separation of Powers Clause") is inapplicable to counties and cities, and instead applies only to state government.
In 1910, this Court interpreted the Separation of Powers Clause in the 1877 Constitution (identical to our current version except for minor punctuation changes) and concluded that it relates to "state legislative, judicial, and executive powers, and has no relation to municipal offices, created by the Legislature, in the discharge of strictly municipal functions." Ford v. Mayor & Council, 134 Ga. 820, 821, 68 S.E. 733 (1910). We have since applied that holding to our current 1983 Constitution; in Building Authority of Fulton County v. State, we cited Ford and again concluded that the Clause applies only to the state, not to cities or counties. "Nor could it, since a county commission is both the executive and legislative branch." 253 Ga. 242, 247 (5), 321 S.E.2d 97 (1984). Applying this precedent, we similarly rejected a claim in 2003 that a city was controlling a municipal court's daily activities in violation of the separation of powers clause. See Ward v. City of Cairo, 276 Ga. 391, 392-393 (1), 583 S.E.2d 821 (2003).
I do not know how to reconcile our holding in Turner County with our holdings in Ford, Building Authority of Fulton County, and Ward. And we did not attempt to do so in Turner County; there, we cited only Ward, did not acknowledge its holding regarding the scope of the Separation of Powers Clause, and simply distinguished it as factually different. Turner County, 293 Ga. at 748.
Superior court judges exercise the State's judicial power, and thus are subject to the Separation of Powers Clause even under Ford and its progeny. But if the Separation of Powers Clause applies only to the exercise of state powers, it's difficult to see how that Clause is implicated by allegations-like those here-that a superior court judge is simultaneously exercising state judicial power and local legislative power.
At the same time, it's possible that separation-of-powers principles are found in more than simply the Separation of Powers Clause; like the U.S. Constitution (which lacks such a clause), they may also arise from the nature *289 and structure of the Georgia Constitution. Whether they do, and how such principles might apply to local governments (which have their own very complicated article of the Georgia Constitution), is not a question we must answer today. The majority opinion properly concludes that the power the Act calls judges to exercise is merely judicial power, and thus does not contravene the separation of powers. I agree.
I am authorized to state that Justice Blackwell joins in this concurrence.
Benham, Justice, dissenting in part.
I concur with Division 1 of the majority's opinion addressing the sovereign immunity issue raised in this appeal. I dissent, however, with respect to Divisions 2 and 3, and would hold that OCGA § 36-70-25.1 is unconstitutional because it improperly delegates purely legislative issues to the trial court for judicial resolution.
The majority characterizes the issue posed in this case as one involving the evidentiary hearing process set forth in OCGA § 36-70-25.1. What is, in my opinion, unconstitutional is not the evidentiary hearing process set forth in the statute but the judicial resolution it authorizes.
The majority opinion points to some obvious differences between the judicial resolution statute involved in this case and the one included in the Local Option Sales Tax ("LOST") Act involved in Turner County v. City of Ashburn , 293 Ga. 739, 749 S.E.2d 685 (2013), which this Court deemed to be unconstitutional. The judicial resolution statute formerly included in the LOST Act (former OCGA § 48-8-89 (d) (4) (D) ) provided that if the parties did not arrive at an agreement for allocating LOST proceeds after engaging in nonbinding arbitration, then any party could petition the superior court for a resolution. Pursuant to this former statute, each party submitted to the trial court its best and final offer, the trial court adopted the offer of one of the parties, and the trial court then prepared a tax distribution certificate for the parties and submitted it to the Commissioner of Revenue. Id. As noted by the majority, this Court concluded that the judicial resolution procedure set forth in the former OCGA § 48-8-89 (d) (4) (D) improperly invaded the legislative function that is reserved to the elected legislative body. Granted, the judicial resolution procedure authorized by the Service Delivery Strategy Act does not authorize a trial court judge to choose between one or the other of the parties' proposed solutions to a dispute, and it does not authorize a judge to submit to the Department of Community Affairs a service delivery strategy as the parties are required to do pursuant to the terms of the Act. Practically speaking, however, I see little difference between the authority of the former LOST Act to pick a sales tax solution proposed by one of the parties and the authority of the SDS Act to "render a decision" with respect to items remaining in dispute between governmental entities who are required to reach an agreement for a service delivery strategy.
OCGA § 36-70-25.1 authorizes a trial court judge "to utilize its contempt powers to obtain compliance with its decision relating to the disputed items under review." In this case, those items include not simply whether the County must provide emergency dispatch services under the communications system it has developed to Union Point and at what cost; they also include animal control, building inspection, planning and zoning, roads maintenance, recreation, libraries, and fire protection. From the record, it appears the parties reached an agreement at mediation as to the service delivery strategy regarding some of these items but that agreement apparently fell apart. The issues in dispute involve not simply a resolution of how Union Point should pay for these services, but whether the County will enter into contracts to provide these services to Union Point at all. These issues have not been resolved between the parties and no service delivery strategy has been agreed upon with respect to these governmental services. What decision is the trial court authorized to render, then, if not a decision as to, for example, "[a]n assignment of which local government or authority, pursuant to the requirements of this article, will provide each service, [etc.]," or the "source of funding for each service," or "the mechanisms to be utilized to facilitate the implementation of the services and funding *290 responsibilities" as set forth in OCGA § 36-70-23 ? These are legislative and even political decisions that are outside the purview of the judiciary to decide. As I see it, the judicial resolution clause of OCGA § 36-70-25.1 runs afoul of the separation of powers doctrine espoused by the State's Constitution. See Ga. Const. of 1983, Art. I, Sec. II, Par. III.
I am authorized to state that Presiding Justice Melton and Justice Hunstein join in this dissent.